# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD HALFENGER AND
ASSOCIATES, INC., a California
corporation,

     Plaintiff,

   v.

UNIONCARE, INC., a Maryland
corporation,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.  04 1467

JURY TRIAL DEMANDED

## COMPLAINT

 Richard Halfenger and Associates, Inc., plaintiff herein, by and through its

counsel, Donald J. Balsley Jr., Esquire, sets forth the following claims against Unioncare,

Inc., defendant herein.

### PARTIES

 1. Plaintiff, Richard Halfenger and Associates, Inc., is a California

corporation, with offices located at 1176 Spaich Drive, San Jose, California.

 2. Defendant, Unioncare, Inc., is a Maryland corporation, which had offices

located at 412 Darby Way, Suite 6, Bridgeville, Pennsylvania, at all times material

hereto.

### JURISDICTION

 3. This court has jurisdiction over defendant as a result of the extensive

business which it conducted within the Commonwealth of Pennsylvania.

VENUE

4.    This Court is the proper venue for this action because plaintiff and defendant had business dealings at defendant's office in the Western District of Pennsylvania.

FACTS

5.    On December 31, 2001, plaintiff and defendant entered an Independent Contractor Agreement. There is attached hereto as Exhibit A a copy of the Independent Contractor Agreement which is made a part hereof as though set forth at length.

6.    On April 2, 2002, plaintiff and defendant entered an Amendment to Independent Contractor Agreement. There is attached hereto as Exhibit B a copy of the Amendment to Independent Contractor Agreement which is made a part hereof as though set forth at length.

7.    Pursuant to the terms and conditions of the Agreement, plaintiff produced or caused to be produced new annualized life insurance premiums for calendar years 2002 and 2003.

8.    Pursuant to the terms and conditions of the Agreement, plaintiff produced or caused to be produced new annualized health insurance premiums.

9.    Pursuant to the terms and conditions of the Independent Contractor Agreement as amended, hereinafter referred to as "Agreement," plaintiff was eligible for the incentive in Addendum B to the Agreement.

10.     Pursuant to the terms and conditions of the Agreement, plaintiff was entitled to reimbursement for travel fares and lodging facilities necessary to conduct business.

11.     Defendant has failed and refused to provide plaintiff with an accounting of the premiums for 2002 and 2003.

12.     Defendant has failed and refused to pay plaintiff the incentive set forth in Addendum B to the Agreement and the reimbursement for travel fares and lodging facilities.

WHEREFORE, plaintiff Richard Halfenger and Associates, Inc., demands that this Court enter judgment in its favor and against defendant Unioncare, Inc., in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars plus attorney's fees and costs, and such other amounts as this Court deems to be just and proper under the circumstances.

Donald J. Balsley Jr.
PA I.D. No. 33638

535 Smithfield Street, Suite 619
Pittsburgh, PA 15222-2302
(412) 765-1760

Attorney for Plaintiff

ENTERED MAR - - 2002

RECEIVED BY
INDIVIDUAL LIFE & HEALTH

## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement (the "Agreement") is entered into between UNIONCARE, Inc., a Maryland corporation, with its principal place of business at 111 Massachusetts Avenue, N.W., Washington, D.C. 20001 ("UNIONCARE"), AND, Richard Halfenger and Associates, Inc., Federal Tax Identification Number 77-0586642, of 1176 Spaich Drive, San Jose, California (the "Contractor"), this 31st day of December 2001.

### RECITALS

WHEREAS, UNIONCARE desires to have the following services be performed by the Contractor:

1. Commencing January 1, 2002, or such other date as the parties may agree, Contractor shall produce or cause to be produced a minimum of $3,000,000 in new annualized life insurance premium (net of any premium refunds and/or policy terminations) for each calendar year this Agreement is in force; and

2. Commencing January 1, 2002, or such other date as the parties may agree, Contractor shall produce or cause to be produced a minimum of $750,000 in new annualized health insurance premium when the products become available; and

3. Recruit, train, motivate and retain regional marketing directors sufficient to support the activities of the general agents of UNIONCARE and its marketing partners; and

4. Build a positive relationship with labor leaders and labor organizations thereby gaining endorsement of and support for UNIONCARE's marketing program(s) and the products of the Marketing Companies listed in Addendum A attached hereto and incorporated herein by reference; and

5. Advise UNIONCARE and Marketing Companies of agent-oriented issues, such as non-commission incentives and rewards, and producer communications.

WHEREAS, the Contractor agrees to perform these services for UNIONCARE under the terms and conditions set forth in this Agreement.

WHEREAS, it is understood and agreed between the parties to this Agreement that the Contractor is an independent contractor in the performance of each and every part of this Agreement. Nothing contained in this Agreement shall be construed to be inconsistent with the status or the relationship of the Contractor as an independent contractor.

THEREFORE, in consideration of the mutual promises set forth herein it is agreed by and between UNIONCARE and Contractor as follows.

### SECTION ONE.    PLACE OF WORK

It is understood that the Contractor's services will be rendered in several regions of the United States. Any travel shall be approved by UNIONCARE. For such travel, UNIONCARE agrees that the Contractor will be reimbursed in full for reasonable transportation, lodging, and meal expenses which directly relate to the performance of his duties under this Agreement. Whether an expense is reasonable should be decided exclusively by UNIONCARE.

At all times, the Contractor shall attempt to utilize reasonable inexpensive means of travel fares and lodging facilities necessary to conduct business.

1

## SECTION TWO.    TIME DEVOTED TO WORK

In the performance of the goals of this Agreement, the services and the hours Contractor works on any given day will be entirely within the Contractor's control and UNIONCARE will rely upon the Contractor to put in such number of hours as are reasonably necessary to fulfill the spirit and purpose of this Agreement.

## SECTION THREE.    COMPENSATION

Throughout the entire term of this Agreement the Contractor shall be eligible for the incentive in Addendum B to this Agreement.

Also, throughout the entire term of this Agreement, the Contractor will be reimbursed for those reasonable expenses more fully set forth in Section One of this Agreement.

The Contractor agrees that he is solely responsible for complying with the applicable federal, state and local laws concerning deductions from gross wages, including federal, state and local taxes. Additionally, the Contractor is responsible for maintaining, at the Contractor's expense, such amounts of Workers' Compensation insurance, disability insurance, accident, health, and life insurance (and any other insurance necessitated by the independent contractor status of the Contractor) to fully protect both Contractor and UNIONCARE from any and all claims for injury or death arising from the performance of this Agreement. Contractor agrees to provide UNIONCARE with certificates evidencing the required coverage before Contractor begins work hereunder.

## SECTION FOUR.    LIABILITY

The manner, method, and means of the work to be performed under this Agreement are the contractor's exclusive responsibilities. Contractor assumes responsibility for the condition of tools and equipment used in the performance of this Agreement. Contractor will carry, for the duration of this Agreement, public liability insurance in an amount acceptable to UNIONCARE. In addition, Contractor agrees to carry, for the duration of this Agreement, errors and omissions insurance in the amount of $1 million. Contractor agrees to indemnify and hold UNIONCARE harmless for any and all claims, losses or causes of actions which may arise directly or indirectly from the acts or omissions of Contractor in performance of his duties under this Agreement.

## SECTION FIVE.    TERM

The initial term of this Agreement shall commence on January 1, 2002, and shall terminate on December 31, 2007 ("Initial Term"). Provided the Contractor has met or exceeded the production goals established during the Initial term, this Agreement shall automatically renew itself for successive one year terms commencing January 1, 2008, unless terminated as provided herein.

## SECTION SIX.    TERMINATION

After the Initial Term, this Agreement is terminable at will by either party hereto upon providing thirty (30) days written notice to the other party.

Notwithstanding the foregoing, UNIONCARE may terminate this Agreement immediately for cause at anytime during or after the Initial Term. No further compensation, including bonus, shall be due or paid to Contractor under this Agreement. As used in this Section Six, the term "for cause" shall mean the occurrence of any one of the following events:

a.    Contractor fails to perform all the duties set forth in this Agreement; or

b.  Contractor fails to achieve production quotas that the parties agreed to by the parties; or

c.  Contractor fails to provide reports relative to the activities of UNIONCARE's Regional Marketing Directors within his territory within thirty (30) days of the end of each calendar month; or

d.  Contractor breach of Section Eight or Section Nine of this Agreement .

## SECTION SEVEN.    STATUS OF CONTRACTOR AS INDEPENDENT CONTRACTOR

This Agreement calls for the performance of the services of the Contractor as an independent contractor. Contractor will not be considered an employee of UNIONCARE for any purpose whatsoever. The parties to this Agreement intend that the relation of the Contractor to UNIONCARE is that of an independent contractor. UNIONCARE is interested only in the work product prescribed under this Agreement. The manner, method, and means of conducting the work are under the sole control of the Contractor. The Contractor will be solely and entirely responsible for his acts during the performance of this Agreement.

The benefits provided by UNIONCARE to its employees, including, but not limited to Workers' Compensation Insurance, unemployment insurance, disability insurance, and health and life insurance, are not available from UNIONCARE to the Contractor.

UNIONCARE may, during the term of this Agreement, engage other independent contractors in the territory to be serviced by the Contractor.

## SECTION EIGHT.    RIGHT OF SUPERVISION AND INSPECTION

All work performed under and pursuant to this Agreement must meet the approval of UNIONCARE and shall be subject to UNIONCARE's general right of inspection and supervision. This includes, and is not limited to, the Contractor:

1.  protecting and properly representing UNIONCARE's name and interests at all times; and/or

2.  protecting and properly representing the name and interest of the Marketing Companies; and/or

3.  not receiving any commission or remuneration from companies affiliated with the marketing companies external to an agency agreement established through UNIONCARE.

## SECTION NINE.    CONFIDENTIALITY

The Contractor will acquire or have access to information which is of a highly confidential and proprietary nature. All specifications, applications, customer lists, techniques or ideas utilized or developed in connection with this Agreement are and shall remain confidential and proprietary to UNIONCARE, and/or the Marketing Companies, as appropriate. Therefore, the Contractor will not utilize such information or knowledge for the advantage of Contractor or any party other than UNIONCARE. In addition, Contractor will not utilize such information or knowledge in the course of any employment by any party other than UNIONCARE.

Each party shall not disclose any information or knowledge concerning any other party's

operations or procedures, which is hereby deemed confidential information, except as otherwise required by law. If confidential information of a party is disclosed to or otherwise acquired by another party, such information shall be held in confidence and surrendered by the acquiring party to the disclosing party upon the termination of this Agreement or upon prior written request by the disclosing party. The parties may not utilize the service marks, trademarks or tradenames of any other party to this Agreement, or any service marks, trademarks or tradenames so similar as likely to cause confusion, without express written approval of such other party.

Each party shall not disclose any information or knowledge concerning nonpublic financial or medical information disclosed by persons who are "consumers" or "customers", as those terms are defined in the federal Financial Services Modernization Act of 1999 and regulations issued pursuant to that Act, which is hereby deemed Confidential Information, except as otherwise required or permitted by law. If Confidential Information of a party is disclosed to or otherwise acquired by another party, such information shall be held in confidence and surrendered by the acquiring party to the disclosing party upon the termination of this Agreement or upon prior written request by the disclosing party.

The parties shall comply with all applicable laws and regulations regarding confidentiality of information. Contractor shall not furnish any identifiable data or information provided to Contractor by UNIONCARE to any third party without the written consent of the UNIONCARE, except as reasonably necessary to fulfill its obligations pursuant to this Agreement or as required or permitted by applicable law. The restrictions set forth in this Section Nine shall not apply to data or information which is compiled on an aggregated basis for statistical and reporting purposes or from which a person could not reasonably be expected to identify a "customer" or "consumer".

HIPAA Compliance: The parties acknowledge that the provisions of the federal Health Insurance Accountability and Portability Act of 1996, and regulations issued pursuant to that law (collectively, "HIPAA"), affect the parties' operations. As such the parties will be required to comply with applicable sections of HIPAA. Each party will use its reasonable best efforts to work with the other during the term of this Agreement to ensure that UNIONCARE and Contractor comply with all applicable requirements of HIPAA. Such compliance may include, where applicable, a requirement that the parties' subcontractors or agents, if any, agree to such written contractual provisions as UNIONCARE and Contractor develop.

This Section Nine shall survive termination of this Agreement.

## SECTION TEN.    CHOICE OF LAW

This Agreement shall be governed by the laws of the District of Columbia.

## SECTION ELEVEN.    NON-ASSIGNABILITY

Neither this Agreement, or any interest herein, or claim hereunder, shall be assigned or transferred by the Contractor to any party or parties.

## SECTION TWELVE.    MODIFICATION TO AGREEMENT

Addendum A to this Agreement will automatically be modified whenever a new marketing arrangement has been established by UNIONCARE.

## SECTION THIRTEEN.    ENTIRE AGREEMENT

This Agreement and the addenda thereto set forth the full and complete understanding of the

parties hereto. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assignees.

This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitute one and the same original.

IN WITNESS WHEREOF, the parties have agreed to and executed this Agreement at Washington, D. C. this _21_ day of _MARCH_, 2002.

Richard Halfenger and Associates, Inc.
Contractor

UNIONCARE, Inc.

305/900/AGREEMENTS/INDEPENDENT/CONTRACTOR/AGREEMENT/HALFENGER&ASSOC.AGREEMENT
03/14/02HALFENGER AGREEMENT

## ADDENDUM A

### Marketing Companies

The Union Labor Life Insurance Company
Union Standard of America Life Insurance Company
Massachusetts General Life Insurance Company
College Life Insurance Company
UNIONCARE, Inc.
ULLICO Life Insurance Company
Great Southern Life
Americo Life
Assurity Life
Woodman Life & Accident
Indianapolis Life

6

**Exhibit A**
**Page 6 of 7**

## ADDENDUM B

The incentive bonus payable to Contractor shall be the sum of the following percentages of paid annualized premium, except as noted:

| | Product Type | Percentage |
|---|---|---|
| The Union Labor Life Insurance Company Union Standard of America Life Insurance Company | Medicare supplement | 1.00% |
| The Union Labor Life Insurance Company Union Standard of America Life Insurance Company | Long Term Care Home Health Care | 3.00% LEVEL *RLH (AH)* |
| Marketing partners other than The Union Labor Life Insurance Company or Union Standard of America Life Insurance Company | life insurance | 3.00% of paid first year annualized premium<br><br>1.00% of paid renewal annualized premium |
| Marketing partners other than The Union Labor Life Insurance Company or Union Standard of America Life Insurance Company | disability income Medicare supplement | 3.00% LEVEL *RLH* |

Richard Halfenger

By _Richard I Halfenr_

UNIONCARE, Inc.

By _____

Exhibit A
Page 7 of 7

## AMENDMENT TO INDEPENDENT CONTRACTOR AGREEMENT

This Amendment to be attached to a certain Independent Contractor Agreement effective December 31, 2001, by and between UNIONCARE, INC., a Maryland corporation, with its principal place of business at 111 Massachusetts Ave., NW, Washington, D.C. 20001 AND Richard Halfenger and Associates, Inc., TIN 77-0586642, of 1176 Spaich Drive, San Jose, California.

WHEREAS, the parties executed an agreement effective December 31, 2001 (the AGREEMENT) pursuant to which the Independent Contractor is to perform the duties as outlined in the agreement; and

WHEREAS, the parties wish to amend portions of the Agreement.

NOW, THEREFORE, in consideration of the premises and mutual promises and conditions contained herein, it is agreed as follows:

A. Section entitled "RECITALS".

For the calendar year 2002, ONLY, the amount in subsection 1 is changed from "$3,000,000" to "$2,000,000; AND, in subsection 2 the amount is changed from "$750,000" to "$350,000.

IN WITNESS WHEREOF, the undersigned have caused this Amendment to the Independent Contractor Agreement to be duly executed by authorized officers effective April 2, 2002.

UNIONCARE, INC.

Richard Halfenger and Associates, Inc
Contractor

**Exhibit B**