IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD HALFENGER AND ASSOCIATES, INC., a California corporation, | ) ) ) ) | |
| | ) | Case No. 04-1467 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| UNIONCARE, INC., a Maryland corporation, | ) ) ) | |
| | ) | Cercone, J. |
| Defendant. | ) | |

**PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM**

Richard Halfenger and Associates, Inc., ("RHA") files this Answer to Counterclaim by Unioncare, Inc. ("Unioncare"), and states as follows:

ANSWER TO COUNTERCLAIM

PARTIES

1. RHA admits, on information and belief, the allegations in Paragraph 1.

2. RHA admits the allegations in Paragraph 2.

JURISDICTION

3. The allegations of this paragraph state conclusions of law to which no response is required. To the extent this paragraph contains factual allegations, those allegations are denied.

1

4.  The allegations of this paragraph state conclusions of law to which no response is required. To the extent that Unioncare's Answer to RHA's Complaint is inconsistent with Unioncare's Counterclaim, this Court is the proper venue for Unioncare's Counterclaim.

## FACTS

5.  Based upon information, knowledge, and belief, Unioncare was a subsidiary of ULLICO, Inc. ("ULLICO") at all times pertinent hereto. It is believed that Unioncare provided marketing services through independent contractors such as RHA.

6.  RHA admits that it is an independent contractor and that it sold individual life, health, long-term care and disability income insurance policies which were issued by ULLICO subsidiaries. RHA also admits that it recruited agents for Unioncare to sell ULLICO insurance policies. RHA finally admits that its principal actively worked with labor leaders and labor organizations to generate support for and participation in insurance carriers operated by ULLICO subsidiaries.

7.  RHA admits that it is a party to an Independent Contractor Agreement dated December 31, 2002, and amended April 2, 2002 (the "Agreement" and "Amendment").

8.  RHA admits that it was to produce or cause to be produced a minimum amount of life and health insurance premiums for Unioncare when the products became available for sale.

9. RHA admits that it was required to recruit, train, motivate and retain sufficient Regional Marketing Directors ("RMDs") to support the activities of the general agents of Unioncare.

10. RHA admits that it was required to build a positive relationship with labor leaders and labor organizations thereby gaining endorsement of and support for Unioncare's marketing programs and the insurance products of Unioncare's marketing companies.

11. RHA admits that it was required to advise Unioncare and its marketing companies of agent-oriented issues, such as non-commission incentives and rewards, and producer communications.

12. RHA admits that its compensation was set forth in ADDENDUM B to the Agreement. This compensation was the sum of specified percentages of paid annualized premium.

13. RHA admits that it would be reimbursed in full for reasonable transportation, lodging, and meal expenses for travel as approved by Unioncare. RHA admits that it was required to attempt to utilize reasonable inexpensive means of travel fares and lodging facilities. RHA also admits that Unioncare decided whether an expense was reasonable.

14. RHA admits that Unioncare could have terminated the Agreement immediately for cause. RHA admits that the Agreement sets forth that "for cause" would include RHA's failure to perform all the duties that are set forth in the Agreement; or RHA's failure to achieve production quotas that were agreed to by the parties; or RHA's

failure to provide reports relative to the activities of Unioncare's RMDs; or RHA's failure to protect and properly represent Unioncare's name and interest at all times or protect and properly represent the names and interest of its Marketing Companies; or RHA's receipt of any commission or remuneration from companies external to an agency agreement established through Unioncare, or RHA's disclosure of Confidential and Proprietary Information. RHA admits that it complied with the terms and conditions of the Agreement. By way of further answer, Unioncare did not terminate the Agreement for cause.

15. RHA admits that it was required to protect and properly represent Unioncare's name and interests and that it was required to protect and properly represent the name and interest of Unioncare's marketing companies. RHA also admits that it was not entitled to receive any commission or remuneration from companies affiliated with the marketing companies external to an agency agreement established through Unioncare.

16. RHA admits that it was required to maintain as confidential and proprietary to Unioncare and/or its marketing companies, as appropriate, all specifications, applications, customer lists, techniques or ideas utilized or developed in connection with the Agreement.

17. RHA admits that Richard Halfenger died in November 2003.

18. RHA admits that ULLICO decided to exit the individual insurance business. Upon the basis of information, knowledge, and belief, it is denied that ULLICO made the decision to exit the individual insurance business in September, 2003.

Rather, it is believed that ULLICO experienced so many problems with its board of directors and certain shareholders as well as various state investigations as to possible corruption and self-dealing that ULLICO decided to terminate its insurance business and to attempt to sell its business to the highest bidder many months if not a year before its exit from the individual insurance business.

19. RHA denies that RHA engaged in practices that were in violation of the Agreement. RHA denies that it has breached its fiduciary duties, if any, to Unioncare. By way of further answer, RHA believes that Unioncare decided to exit the individual insurance business in an attempt to sell this business to recover funds to settle its internal disputes.

20. RHA denies that it authorized the payment of monthly subsidies from Unioncare funds to certain RMDs and for the reimbursement of all expenses incurred by certain RMDs. RHA also denies that it allowed subsidies to certain RMDs to be renewed or increased for no demonstrable business reason. By way of further answer, RHA was an independent contractor with limited involvement in ULLICO's operations of Unioncare and Unioncare's independent contractor agreements with RMDs. RHA denies that it had authority to direct ULLICO and/or Unioncare to make payments or to withhold payments from RMDs. ULLICO and Unioncare decided who would be paid and the amount of the payments.

21. RHA denies that it had independent contractor agreements with PR Consultants. RHA also denies that it paid PR Consultants. RHA believes that ULLICO through its subsidiary Unioncare had agreements with PR Consultants. Unioncare paid

PR Consultants for their expenses in the performance of their duties. RHA denies that it allowed subsidies to certain PR Consultants to be renewed or increased for no demonstrable business reason. ULLICO and/or its subsidiary Unioncare decided what would be paid to PR Consultants.

22. RHA denies that it arranged for certain payments to be made from Unioncare to the spouses of certain of the PR Consultants (and at least one RMD) to reduce improperly the income of PR Consultants that would be reportable to the Social Security Administration or to circumvent lawful liens imposed on PR Consultants. By way of further answer RHA believes that ULLICO and/or its subsidiary Unioncare entered Independent Contractor Agreements with RMDs and PR Consultants. As a result, ULLICO and/or its subsidiary Unioncare made decisions as to the amounts to be paid to RMDs and PR Consultants. RHA did not make payments to RMDs and PR Consultants and/or their spouses.

23. RHA denies that it arranged for the payment of advances far in excess of the income Unioncare's agents could realistically produce or, in the end, did produce. By way of further answer, ULLICO and/or its subsidiary Unioncare made payments to Unioncare's agents pursuant to Independent Contractor Agreements between Unioncare and its agents. RHA denies that ULLICO and/or its subsidiary Unioncare advanced to its agents for prospective income and lead fees an amount in excess of $1,000,000. Upon the basis of information, knowledge, and belief, ULLICO and/or its subsidiary Unioncare failed to pay its agents the amounts that were and are due and owing.

24. RHA denies that it created incentive and reward programs for Unioncare's agents. By way of further answer, RHA did not control the expenditure of Unioncare funds. RHA acted in the best interest of Unioncare and Unioncare authorized the expenditure of ULLICO's funds.

COUNT I

BREACH OF CONTRACT

25. The averments set forth in paragraphs 1 through 24, inclusive, are incorporated herein as through set forth at length.

26. RHA did protect and properly represent Unioncare's name and interests at all times.

27. RHA denies that it authorized or increased monthly subsidies and commissions for RMDs, PR Consultants and agents who were Independent Contractors for Unioncare. RHA denies that it authorized payments to spouses of PR Consultants (and at least one RMD). RHA denies that it authorized advances to Unioncare's agents in excess of prospective income. RHA denies that it arranged for the expenditure of Unioncare funds in a manner and for purposes that were inconsistent with Unioncare's best interests. By way of further answer, RHA did not have any authority to direct the payment of monies to Unioncare's agents under its Agreement with Unioncare. Rather, ULLICO and/or its subsidiary Unioncare made decisions as to the amounts to be paid to Unioncare's agents.

28. RHA did advise Unioncare and its marketing partners of agent-oriented issues.

29. RHA denies that it developed non-commission incentives and rewards for Unioncare's agents. Rather, upon the basis of information, knowledge, and belief, Unioncare developed various programs in an effort to retain its agents when ULLICO failed to develop products for sale by Unioncare's agents. In an effort to retain agents while ULLICO attempted to obtain approval for its products, Unioncare offered its agents non-commission incentives and rewards.

30. RHA denies that it failed to protect and properly represent Unioncare's name and interest. RHA denies that it failed to advise Unioncare of agent-oriented issues. By way of further answer, RHA denies that it would be an agent-oriented issue or that RHA did not protect and properly represent Unioncare's name and interest if RMDs, PR Consultants and agents received increased monthly subsidies and commissions from Unioncare; if spouses of PR Consultants (and at least one RMD) received payments from Unioncare, and if agents received advances from Unioncare in excess of prospective income.

31. RHA denies that Unioncare suffered harm and is entitled to relief. By way of further answer, if Unioncare suffered any harm, it made all payments to RMDs, PR Consultants and agents pursuant to Independent Contractor Agreements between Unioncare and RMDs, PR Consultants and agents respectively.

COUNT II

32. The averments set forth in paragraphs 1 through 31, inclusive, are incorporated herein as through set forth at length.

33. RHA denies that it had a fiduciary duty to protect the best interests of Unioncare and its marketing partners. By way of further answer, there was not any fiduciary relationship between RHA and Unioncare.

34. RHA denies that it breached any fiduciary duty to Unioncare. By way of further answer, RHA denies that it authorized or increased monthly subsidies and commissions for RMDs, PR Consultants and agents who were Independent Contractors for Unioncare. RHA denies that it authorized payments to spouses of PR Consultants (and at least one RMD). RHA denies that it authorized advances to Unioncare's agents in excess of prospective income. RHA denies that it arranged for the expenditure of Unioncare funds in a manner and for purposes that were inconsistent with Unioncare's best interests. By way of further answer, RHA did not have any authority to direct the payment of monies to Unioncare's agents under its Agreement with Unioncare. Rather, ULLICO and/or its subsidiary Unioncare made decisions as to the amounts to be paid to Unioncare's agents.

35. RHA denies that it breached any fiduciary duties to Unioncare. RHA denies that it acted with willful disregard of Unioncare's rights. RHA denies that Unioncare is entitled to punitive damages.

## AFFIRMATIVE DEFENSES

RHA asserts the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE

Unioncare fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Unioncare's claims are barred, in whole or in part, by reason of the equitable doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Unioncare's claims are barred, in whole or in part, by reason of the equitable doctrine of estoppel and laches.

### FOURTH AFFIRMATIVE DEFENSE

RHA reserves the right to assert any other defenses that are available to it and/or subsequently discovered.

### PRAYER FOR RELIEF

WHEREFORE, Richard Halfenger & Associates, Inc. requests this Court to enter judgment in its favor and against Unioncare, Inc., on the Counterclaim by Unioncare, said judgment to include costs and expenses, including attorney's fees, and such other and further relief as may be deemed appropriate.

Dated: January _____, 2005

_____
Donald J. Balsley Jr.
PA I.D. No. 33638

535 Smithfield Street, Suite 619
Pittsburgh, PA 15222-2302
(412) 765-1760

Attorney for Plaintiff

JURY TRIAL DEMANDED